IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CIVIL NO.: 10-1519 (JAG) |
| 323 "QUINTALES" OF GREEN COFFEE BEANS, et al. | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

On June 9, 2010, the United States instituted a forfeiture action against 323 "quintales" (approximately 32,000 pounds) of green coffee beans, which had been seized in February of that same year from the warehouse facilities of Gustos Coffee, doing business as International Coffee Vendors.  (D.E. 1, ¶¶ 2, 7).[1]  On July 13, 2010, Daniel Omar Torres ("Torres" or "third-party plaintiff"), Gustos Coffee's President and CEO, filed an answer, a notice of claim, and a third-party complaint against Nelson Colón, ("Colón" or "third-party defendant"), an inspector for the Commonwealth of Puerto Rico Department of Agriculture ("ASDA," the acronym for the agency's name in Spanish, the "Administración de Servicios y Desarrollo Agropecuario"), and Javier Aquino ("Aquino"), the Secretary of Agriculture for the Commonwealth of Puerto Rico.  (D.E. 9).[2]

---

[1] One "quintal" is equal to 100 kilograms.  <u>United States v. Approximately 600 Sacks of Green Coffee</u>, 381 F. Supp. 2d 57 (2005).

[2] The complaint is styled a "cross claim and third party complaint" (D.E. 9., p. 9); however, it contains no cross claim, as Aquino and Colón are not Torres's co-parties, and cross claims may only be asserted against co-parties.  <u>See</u> Fed. R. Civ. P. 13(g).

Pending before the court is third-party defendant Colón's motion for judgment on the pleadings. (D.E. 50).[3] For the reasons set forth below, it is recommended that the motion be granted.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Unless otherwise indicated, the court draws the following facts from the third-party complaint (D.E. 9) and treats them as true for the purposes of the pending motion:

Third-party plaintiff Torres is the president of Gustos Coffee, which is in the business of roasting coffee beans. (D.E. 9-1, 9, p. 10, ¶ 1).[4] At an unspecified time in 2009, Torres purchased 320,000 pounds of green coffee beans from Beneficiado Torres, in Lares, Puerto Rico, at an inflated price based on the "price fixing" policies of the Commonwealth of Puerto Rico. (D.E. 9, ¶¶ 3, 11, 18) (quotation marks in original).[5] On or about February 1, 2010, Colón entered Torres's warehouse and took samples of said coffee beans for tasting purposes. (D.E. 9, ¶¶ 4, 12). At that time, no production was occurring. Id. The samples were sent to a laboratory for testing to determine the country of origin using a method called linear discriminant analysis, which third-party plaintiff alleges is not reliable. (D.E. 9, ¶ 12). The results of that test showed a greater than 99% probability that the beans were from the Dominican Republic. (D.E. 1-1, p. 3). A search in a United States Customs and Border Protection database revealed that neither Torres, nor International Coffee Vendors, nor Gustos Coffee, nor the individual who had sold the beans to Torres, had made a customs entry or legally imported the beans into Puerto Rico. (D.E. 1-1, 3). Subsequently, ASDA

---

[3] Colón's motion is entitled "motion to dismiss and/or for judgment on the pleadings," and it was filed after Colón filed his answer to the third-party complaint. (D.E. 19, 50). A motion to dismiss must be asserted before any responsive pleading is filed, whereas a motion for judgment on the pleadings is filed after the pleadings are closed. See Fed. R. Civ. P. 12(b) and (c). Therefore, the instant motion can only be construed a motion for judgment on the pleadings.

[4] Although the third-party complaint does not so state, the government's forfeiture complaint indicates that Gustos Coffee does business under the name "International Coffee Vendors," which third-party plaintiff has not disputed. (D.E. 1-1, p. 2).

[5] The third-party complaint states that Torres purchased 320,000 pounds of coffee beans (D.E. 9, ¶ 11), while the forfeiture complaint indicates that 32,000 pounds of beans were seized from his warehouse. (D.E. 1, p. 1, 1-1, p. 2).

issued a detention order, and a warrant for seizure of the coffee beans was issued by this court.[6] Id. On or about February 9, 2010, after the 323 "quintales" of coffee beans had been seized, Colón informed Torres that he could purchase the seized beans from ASDA, which is authorized by the Commonwealth government to import coffee into Puerto Rico, at an artificially increased price. (D.E. 9, ¶ 14).[7] The United States alleges that the beans are subject to forfeiture under 19 U.S.C. § 1595a(c)(1)(A), which allows for seizure and forfeiture of merchandise that is stolen, smuggled, or clandestinely imported, and 19 U.S.C. § 1595a(c)(2)(B), which provides the same penalty for merchandise imported without a required license, permit, or other agency authorization.[8]

The remaining facts alleged in the third-party complaint pertain to the way that ASDA regulates the coffee industry. Torres states that ASDA controls the sales, purchase, and importation of coffee beans into Puerto Rico. (D.E. 9, ¶ 3). He alleges that, during 2009, ASDA purchased approximately 84,000 "quintales" of coffee beans from foreign growers and 34,000 "quintales" from local growers and subsequently resold the beans at inflated prices. Id. The purpose of this policy is to secure market control, increase revenue for coffee growers, and increase production. Id. However, the revenue from coffee sales in 2009 amounted to $31,167,000, none of which was used for subsidies, incentives, or donations for the purchase and sale of coffee, while the payroll expenditures for that year were $13,848,000. (D.E. 9, ¶ 4). Third-party plaintiff concludes that these regulatory measures are "a clear attempt to monopolize and socialize payroll, and overhead for the State Government Agency." Id.

---

[6] The facts from the preceding three sentences are drawn not from the third-party complaint, but from the government's complaint for forfeiture in rem. (D.E. 1). These facts, however, are not material to any of third-party plaintiff's claims and are set forth only to provide context for the rest of the events described in the third-party complaint. Additionally, it should be noted that third-party plaintiff does not contest the veracity of these alleged facts. (See D.E. 9; 62).

[7] The government's complaint states that the seizure occurred on February 16, 2010. (D.E. 1-1, p. 4). The discrepancy is immaterial for the purposes of the pending motion.

[8] The government's complaint cites Sections 1595a(c)(1)(A) and 1595a(c)(2)(C). (D.E. 1, p. 1). The latter citation is presumed to be an error, as subsection (c)(2)(C) refers to merchandise or packaging that violates copyright, trademark or other trade name protections, which is not alleged anywhere in the government's complaint or supporting affidavit.

Based on these alleged facts, third-party plaintiff contends that the price control and importation policies violate his rights under the antitrust laws, the Equal Protection Clause of the Fourteenth Amendment, and the Dominican Republic-Central America-United States Free Trade Agreement ("CAFTA-DR"). He also alleges that third-party defendants' involvement in the seizure of the coffee beans violated his rights under the Fourth and Fifth Amendments to the United States Constitution. Accordingly, he seeks monetary damages against Colón pursuant to 42 U.S.C. § 1983 for the alleged violations of said laws. He further seeks a declaratory judgment holding Section 353 of Title 3 of the Laws of Puerto Rico unconstitutional.[9]

## II. Standard of Review

The court reviews a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)). The inquiry is whether the allegations, accepted as true, show "a plausible entitlement" to the relief requested. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). To avoid dismissal, a third-party plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Determining whether a complaint makes out a plausible entitlement to relief involves two steps. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009)). First, the court should separate a complaint's factual allegations from any "legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," and disregard the latter. Id. at 12 (quoting Iqbal, 129 S. Ct. at 1949-50) (internal quotations omitted). The court then treats non-conclusory factual allegations as true,

---

[9] The complaint also seeks to enjoin Aquino from enforcing 3 L.P.R.A. § 353 or any price controls or tariffs on coffee in Puerto Rico. On May 19, 2011, however, all claims against Aquino were voluntarily dismissed. (D.E. 35, 36).

"even if seemingly incredible." Id. Second, the court must determine if the factual content, taken as a whole, admits of "the reasonable inference that the third-party defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S. Ct. at 1949). Only if it does will the complaint survive a motion to motion for judgment on the pleadings under Rule 12(c). See id.

## III. Legal Analysis

### A. Third-party plaintiff's Section 1983 Claims

Section 1983 itself does not confer substantive rights, but allows individuals to vindicate rights conferred by the United States Constitution and federal laws through a civil action in federal court. Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). In order for a claim to be cognizable under Section 1983, the complaining party must allege that the conduct complained of was committed by a person acting "under color of state law," and that such conduct caused a deprivation of a constitutional or federal statutory right. See Parratt v. Taylor, 451 U.S. 527, 535-536 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Martínez Vélez v. Simonet, 919 F.2d 808, 810 (1st Cir. 1990). To establish the second prong a plaintiff must demonstrate an actual deprivation of a federally protected right and a causal connection between the defendant's own conduct and the deprivation of that right. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). When the deprivation alleged is that of a right protected by a federal law, it is only actionable under Section 1983 if the statute creates enforceable rights and Congress has not foreclosed the possibility of a Section 1983 remedy. See Blessing v. Freestone, 520 U.S. 329, 340-41 (1997). Torres's Section 1983 claim alleges that Colón "failed to protect" him under the Clayton Act, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the CAFTA-DR. (D.E. 9, ¶ 19). Torres's constitutional claims fail because the facts alleged do not

show that his Fourth, Fifth or Fourteenth Amendment rights were violated. His statutory claims fail because the violations he alleges are not actionable under the federal laws that he cites.[10]

### 1. The Clayton Act

Third-party plaintiff alleges violations of various provisions of the Clayton Act, a section of the antitrust laws, which is codified at 15 U.S.C. §§ 12-27. He further alleges that the price and importation controls on coffee beans in Puerto Rico violate said antitrust laws. The provisions of the Clayton Act that he cites (D.E. 9, ¶¶ 9-10) create a private right of action for individuals seeking damages caused by violations of the antitrust laws and for injunctive relief for threatened loss or damage by a violation of the antitrust laws. See 15 U.S.C. §§ 15, 26.

As an initial matter, third-party plaintiff's assertion of this claim via Section 1983 is procedurally questionable. Statutes that contain comprehensive enforcement mechanisms of their own reflect congressional intent to foreclose any remedy that might otherwise be available under Section 1983. See Blessing, 520 U.S. at 340; Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1, 20-21 (1981). As evidenced by the detailed enforcement provisions that third-party plaintiff himself cites, the antitrust laws contain the type of comprehensive enforcement scheme that the Supreme Court has repeatedly found to preclude actions to protect remedy the same violations under Section 1983. See id.; City of Ranchos Palos Verdes v. Abrams, 544 U.S. 113 (2005); Smith v. Robinson, 468 U.S. 992 (1984). The proper

---

[10] Colón contends that Torres is not the owner of the seized coffee beans, and thus lacks standing to assert these claims as he has not suffered a direct injury. (D.E. 50, pp. 6-11). He submits that International Coffee Vendors, a corporation of which Torres is the president, owns the coffee beans and that only the corporation has standing to assert said claims. The third-party complaint indicates, however, that Torres purchased the coffee beans, (D.E. 9, ¶ 11) and, further, that Torres claims to be the owner of the beans. (D.E. 9-1). At this stage of the proceedings, the court is obliged to accept as true all factual allegations in the complaint and cannot go beyond the pleadings to evaluate disputed issues of fact. Although Colón's argument may appropriate in a motion for summary judgment, the undersigned declines to consider it at this time.

procedure would be to assert the claims directly under the civil enforcement provisions of the Clayton Act.[11]

Even assuming *arguendo* that Torres is properly asserting his antitrust claims under 15 U.S.C. §§ 15, 26 rather than 42 U.S.C. § 1983, his allegations have no merit. Regardless of the procedural vehicle employed, it is a fundamental principle that state action is immune from liability under the federal antitrust laws. See Parker v. Brown, 317 U.S. 341 (1943). In Parker, the Court held that the antitrust laws applied only to anticompetitive conduct of private actors and was not "intended to restrain state action or official action directed by a state." Id. at 313; see also Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38 (noting that the Parker court ruled that "the Sherman Act was intended to prohibit private restraints on trade, and it refused to infer an intent to 'nullify a state's control over its officers and agents' in activities directed by the legislature.") (citing id. at 351) (emphasis in original). The conduct that Torres complains of is clearly state action. The price and importation controls were enacted by the legislature of Puerto Rico, and Colón was a state official acting pursuant to these mandates.[12] In fact, the state law upheld in Parker was similar, as it was also enacted to maintain price controls on agricultural commodities (in that case, raisins). See 317 U.S. at 346-47. Therefore, the antitrust laws do not proscribe the regulations that Torres contests, and the third-party complaint thus fails to state a violation of the Clayton Act.

---

[11] Torres's request for treble damages against Colón under the Clayton Act in his prayer for relief (D.E. 9, p. 19) indicates that he may in fact have intended to assert his antitrust claim under that Act, and not under § 1983. However, the third-party complaint only mentions the Clayton Act under the cause of action entitled "violation of 42 U.S.C. § 1983," rather than labeling it separately, and indicates that Colón "failed to protect [Torres]" under said Act. "The liberal nature of Rule 8(e) [of the Federal Rules of Civil Procedure] is no excuse for lazy lawyering." Mulero Abreu, et. al. v. Oquendo Rivera, et. al., 729 F. Supp. 2d 498, 510 n.7 (D.P.R. 2010).

[12] Puerto Rico's status as a Commonwealth does not alter this analysis. The Court's decision in Parker was "premised on the assumption that Congress, in enacting the Sherman Act, did not intend to compromise the States' ability to regulate domestic commerce." Southern Motor Cross Carriers Rater Conference v. United States, 471 U.S. 48, 56 (1985). "In holding that the States were free to regulate 'domestic commerce,' the Parker Court relied upon congressional silence." Id. at 57, n.19. The undersigned is not aware of any congressional pronouncement on Puerto Rico's power to regulate its internal commerce that indicates intent to treat the Commonwealth differently in this respect, nor has plaintiff cited any such authority. Furthermore, as discussed further in Section B, *infra*, Congress has, in fact, specifically ratified the duties on coffee enacted by the Puerto Rico legislature. See 19 U.S.C.§ 1319a.

## 2. The Fourth Amendment

The only Fourth Amendment claim that can be gleaned from the third-party complaint is not regarding the seizure itself, but rather the initial entrance on to Torres's business premises to obtain the sample of beans for tasting.  Specifically, he charges that Aquino and Colón "falsely claimed that a sample of the coffee was needed, notwithstanding that no production of coffee was taken [sic] place, [ ] fraudulently and in violation of the Fourth Amendment . . . ." (D.E. 9, ¶ 4).  He then states that a statute exists allowing the Commonwealth government to "take samples for tasting when production or roasting in [sic] taking place." (D.E. 9, ¶ 19).[13]  He further alleges that Colón entered his premises "without a warrant and obtained samples for the purpose other than that which the statute provides, [while his] intent was to conduct an unreliable test to determine the origin of the coffee beans." (D.E. 9, ¶ 19).  These allegations do not make out a viable Fourth Amendment claim because Colón's entry and taking of the coffee beans was a lawful search and seizure.  First, Colón did not require a warrant because the search falls under the regulatory search exception to the warrant requirement.  Second, Colón's subjective intent is irrelevant to the legality of the search under the Fourth Amendment.

The Fourth Amendment protects the right of the people to be free from "unreasonable searches and seizures." U.S. Const. amend. IV.  Searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  A well-established exception exists for "administrative inspections in 'closely regulated' businesses."  New York v. Burger, 482 U.S. 691, 704 (1987); see also Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989).  An administrative search will fall within this exception if three criteria are

---

[13] Third-party plaintiff incorrectly cites the statute as 3 L.P.R.A. § 253, et seq.  Sections 253 through 280 of Title 3, Laws of Puerto Rico, were repealed by Act No. 230 of July 23, 1974.  Apparently, third-party plaintiff intended to cite 5 L.P.R.A. § 320i, which allows the Secretary of Agriculture to "take samples and perform any coffee tasting test that the Secretary deems necessary during any stage of the production."

satisfied: (1) the state has a substantial interest in regulating the industry (2), the inspection is necessary to further the regulatory scheme, and (3) the inspection is properly limited in scope and puts the business owner on notice that the search is being made. Burger, 482 U.S. at 702-703. The second part of this last requirement is satisfied if the regulatory scheme is "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." Id. at 703 (quoting Donovan v. Dewey, 452 U.S. 594, 600 (1981)).

Colón's entry into Torres's business premises and seizure of coffee bean samples falls within this regulatory search exception. See United States v. Approx. 600 Sacks of Green Coffee Beans Seized from Café Rico, 381 F. Supp. 2d 57, 63 n.6 (D.P.R. 2005) (García Gregory, J.). The Laws of Puerto Rico pertaining to agriculture and taxation contain a comprehensive set of provisions pertaining to the regulation of the coffee industry. See, e.g., P.R. Laws Ann. Tit. 5, Ch. 14, 15A; Tit. 13, Ch. 211. The Agriculture Department's stated objective to promote food security, ensure that production is sufficient to meet domestic needs, and ensure availability of listed products, including coffee. 3 L.P.R.A. § 253. Moreover, the laws relating to coffee production express the need to protect the local coffee industry and eradicate plant pests and diseases on coffee plantations. See 5 L.P.R.A. §§ 318-319g; § 318 (establishing a program to "tend to the integrated development of the coffee zone of Puerto Rico, both in the agricultural and the industrial aspect."). Additionally, the tax laws empower the Secretary of Agriculture to fix a duty on coffee imported to Puerto Rico. 13 L.P.R.A. §§ 2201-2205. These provisions evince a substantial government interest in regulating the coffee industry: first, to maintain a productive coffee industry to meet local consumption needs, and second, to promote the economic health of the industry. Evidently, periodic inspections are necessary to further these objectives, especially in order to prevent the spread of pests and diseases, which might come from foreign coffee beans.

Moreover, the number and breadth of the coffee laws and regulations provide ample notice to coffee business owners that their facilities are subject to regulation and inspection. The provision to which third-party plaintiff refers is, in and of itself, sufficient to provide such notice. First, it requires all coffee producers, processors, purchasers, importers, and roasters to maintain records documenting a detailed list of information about their coffee beans and to "provide all the information that the Secretary deems necessary to draft [ ] orders, resolutions, and regulations . . . ." 5 L.P.R.A. §§ 320i(1)-(2). This reporting and record-keeping burden makes it clear that the Secretary of Agriculture closely oversees any business operating in the coffee industry. Additionally, the subsection at issue allows the Secretary to take samples of coffee beans and perform any tests "during any stage of the production." 5 L.P.R.A. §320i(3). Clearly, then, inspections should not take anyone in the coffee business by surprise. The administrative inspections preformed under this scheme are of the type contemplated by the regulatory search exception to the warrant requirement.[14]

Additionally, third-party plaintiff's allegation regarding Colón's intent to discover the beans' country of origin is immaterial to his Fourth Amendment claim. First of all, the statute empowers the Secretary of Agriculture to take samples of coffee beans and "perform *any* coffee tasting test that the Secretary deems necessary." Id. (emphasis added). Torres assumes that the tasting tests preclude testing to determine country of origin, but provides no argumentation to this effect, and such a limitation is not evident from the statute. More importantly, third-party defendant's subjective intent is irrelevant as long as there was a lawful basis for the search. See Horton v. California, 496 U.S. 128, 138 (1990) (holding that law enforcement officers' conduct is evaluated

---

[14] Torres appears to allege that the search was illegal because no production was taking place at the time the samples were taken. (D.E. 9, ¶ 11). However, he also alleges that he is in the business of roasting coffee and that the beans were stored in the warehouse used for his business. The provision allowing samples to be taken "during *any stage* of the production," may also include the time period when a coffee producer is storing the beans that will be used during the production process. Torres has not shown that the phrase "during any stage of the production" ought to be interpreted so narrowly to exclude the preliminary stages of the production process.

10

by objective standards, rather than standards that depend on the officers' subjective state of mind). It is well-settled that courts are "unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." United States v. Santiago Vega, 228 F. Supp. 2d 2, 11 (D.P.R. 2007) (quoting Whren v. United States, 517 U.S. 806, 813 (1996). In Whren, the Court recognized that the Fourth Amendment allows certain actions to be taken under certain circumstances, regardless of motives, and thus rejected any inquiry into the officers' subjective state of mind. United States v. Andrade, 94 F.3d 9, 12 (1st Cir. 1996) (citing 517 U.S. at 813). Therefore, "any argument that ulterior motives can invalidate an otherwise justified" search has been foreclosed by Whren. Id.

### 3. The Fifth Amendment

The third-party complaint mentions the Fifth Amendment only twice: once in the jurisdictional statement and again in a conclusory sentence under the second cause of action, which alleges that Colón "failed to protect Daniel Omar Torres under the laws of the United states [sic] to include . . . the Fifth . . . Amendment to the United States Constitution . . . ." (D.E. 9, ¶ 19). The Fifth Amendment guarantees a variety of rights, including the right to a grand jury indictment, protection against double-jeopardy and compelled self-incrimination, and due process of law. U.S. Const. amend. V. Nowhere in the third-party complaint does Torres elucidate which of his Fifth Amendment rights were violated or in what manner such putative violation occurred.

To the extent that Torres intends to allege that the forfeiture violated the Fifth Amendment prohibition against taking private property for public use without just compensation (the "Takings Clause"), as he argues in his opposition to the instant motion (D.E. 62, pp. 6-7), such an assertion is meritless. The Takings Clause refers only to government seizures of property for *public use*, see, e.g., Hairston v. Danville & W. R. Co., 208 U.S. 598 (1908), which is not the case here. Third-party plaintiff has not alleged that the coffee beans have been put to any use at all, much less public

use. According to the government's complaint, the beans were deposited at a storage facility. (D.E. 1-1, p. 4). Therefore, the Takings Clause is not relevant here.

The relevant section of the Fifth Amendment in analyzing civil forfeitures is the Due Process Clause. That clause entitles individuals whose property interests are at stake due to government actions to notice of the proceedings and an opportunity to be heard. See, e.g., Dusenbery v. United States, 534 U.S. 161, 167 (2002); González González v. United States, 257 F.3d 31, 35 (2001) ("[D]ue process, in the forfeiture context, minimally requires that the government provide an individual with 'notice and an opportunity to be heard' before confiscating his property.") (citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 46 (1993)). To the extent that Torres intends to challenge the seizure of his coffee beans under the Due Process Clause, however, such assertion is also meritless. The Due Process Clause of the Fifth Amendment applies only to actions of the federal government, see Gerena v. Puerto Rico Legal Services, 697 F.2d 447, 449 (1st Cir. 1983) (citing Public Utilities Comm. v. Pollak, 343 U.S. 451, 461 (1952), and third-party defendant Colón is not a federal actor. Even so, Torres has not set forth any facts regarding the notice he received of the seizure or forfeiture proceedings, nor has he alleged that the same were inadequate by Fifth Amendment standards. The record, in fact, reflects that Torres was formally notified of the forfeiture proceeding within one month of its commencement. (See Waiver of the Service of Summons dated July 10, 2010, signed by Daniel Omar Torres, at D.E. 8). Further, Torres has had evidently had an opportunity to present his objections, as they are the subject of the instant motion. Therefore Torres would be hard pressed to argue that the seizure and forfeiture violated his due process rights.[15] The third-party complaint thus fails to set forth any plausible Fifth

---

[15] Moreover, in response to a more specific due process violation allegation, this court has previously held that the same procedure the government followed here in confiscating the coffee beans complied with due process. See Approx. 600 Sacks of Green Coffee Beans, 318 F. Supp. 2d at 64-65.

Amendment violation, and it is recommended that judgment be entered for third-party defendant on this claim.

### 4. The Fourteenth Amendment

It is well-settled that a plaintiff asserting a violation of the Equal Protection Clause of the Fourteenth Amendment must allege he has been a victim of intentional discrimination based on his membership in a protected class, see Washington v. Davis, 426 U.S. 229 (1976), or that he has been intentionally treated differently from others similarly situated and there is no rational basis for the treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Third-party plaintiff does not indicate that he is a member of a protected class nor that he was treated differently from similarly situated individuals. His vague attempt to delineate some type of protected class or unequal treatment is his allegation that ASDA's coffee prices controls cost Torres and "the Puerto Rico consumer an exaggerated amounts [sic] of money, denying [them] equal protection under the laws and treaties of the United States." (D.E. 9, ¶ 3). This allegation fails to plead the level of intent required for equal protection claims. See Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose,' [ ] implies more than intent as volition or . . . awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group.") (internal citation omitted). Moreover, it is hornbook law that economic regulations of the kind Torres challenges do not violate equal protection as long as they have a rational basis. As the Supreme Court has held:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the [resulting] classifications . . . are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical it may be, and unscientific. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

13

Dandridge v. Williams, 397 U.S. 471, 485 (1970) (internal citations and quotations omitted). The reasonable basis for the coffee regulations is evident from the preceding discussion of Puerto Rico's governmental interest in regulating the coffee industry. Therefore, third-party plaintiff's equal protection claim ought to be dismissed.

### 5. The CAFTA-DR

Torres argues that the regulations imposed on coffee imports by the Commonwealth government violate CAFTA-DR, which is a free trade agreement between the United States, several Central American countries, and the Dominican Republic. As third-party defendant correctly points out, treaties between nations are not binding on domestic courts unless they are "self-executing," and thus do not create rights enforceable by individuals in the federal courts. Medellin v. Texas, 552 U.S. 491 (2008); (D.E. 50, p. 5). In the case of CAFTA-DR, no extensive analysis is necessary to determine whether it is self-executing, because its codification by Congress explicitly states that it creates no individually-enforceable rights. 19 U.S.C. § 4012. In its relevant part, the statute provides:

> Effect of Agreement with respect to private remedies:
> No person other than the United States— (1) shall have any cause of action or defense under [CAFTA-DR] or . . . (2) may challenge, in any action brought under any provision of law, any action or inaction by any department, agency, or other instrumentality of the United States, any State, or any political subdivision of a State on the ground that such action or inaction is inconsistent with [CAFTA-DR].

19 U.S.C. § 4012(c). Furthermore, the preceding subsection specifies that no state law "or the application thereof, may be declared in valid" on the ground that it is inconsistent with CAFTA-DR. 19 U.S.C. § 4012(b)(1). Therefore, CAFTA-DR provides absolutely no basis for third-party plaintiff to challenge the Commonwealth's taxation or other regulation of coffee imports from the

Dominican Republic, nor any actions undertaken to enforce such regulations. It is thus recommended that judgment be entered for third-party defendant on this frivolous claim.[16]

### B. Third-Party Plaintiff's Request for a Declaratory Judgment

Third-party plaintiff asks this court to declare "3 L.P.R.A. § 353 et seq. unconstitutional as against a treaty of the United States, and as violative of [the Commerce Clause]." (D.E. 9, ¶ 16). Section 353, the provision of law that Torres cites, merely sets forth the objectives of the Department of Agriculture. The following provisions establish the various sub-agencies of the Department of Agriculture. See 3 L.P.R.A. §§353-375. Nothing in these sections relate to third-party plaintiff's overarching complaint as to the Commonwealth's regulation of the local coffee market. A generous reading of the third-party complaint is that Torres seeks a judgment declaring unconstitutional any Commonwealth law that controls coffee prices or the importation of coffee into Puerto Rico. Indeed, this is the category of laws he sought to enjoin Aquino from enforcing in his prayer for relief. (D.E. 9, p. 19). However, third-party plaintiff fails utterly to identify how such laws are unconstitutional under the Commerce Clause or any other constitutional provision. He does no more than to quote the Commerce Clause, state that the coffee beans were purchased "in commerce," (D.E. 9, ¶ 19), and allege that government imposed price controls "produce a violation of the Commerce Clause." (D.E. 9, ¶ 14). Such allegations are too conclusory to survive a motion for judgment on the pleadings. See Gooley, 851 F.2d at 515 ("Modern notions of 'notice pleading' notwithstanding, a third-party plaintiff . . . is nonetheless required to set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.")

---

[16] Additionally, third-party plaintiff inexplicably mentions the North American Free Trade Agreement ("NAFTA") in the midst of his allegation regarding CAFTA-DR. (D.E. 9, p. 18, ¶ 19). The undersigned must conclude that this was an oversight, as NAFTA pertains only to trade between parties to that treaty, to wit, the United States, México, and Canada, see 32 I.L.M. 605 (1993), whereas third-party plaintiff's argument focuses on trade between the United States and the Dominican Republic.

Moreover, to the extent that third-party plaintiff attempts to argue that the import duties conflict with the Commerce Clause's exclusive reservation to Congress of the power to regulate "commerce with foreign nations," see U.S. Const. Art. I, § 8, Clause 3, this argument is foreclosed by the Tariff Act of 1930. See 19 U.S.C. §§ 1301-1683g. That Act explicitly empowers the Legislature of Puerto Rico to impose tariff duties upon coffee imported to Puerto Rico. 19 U.S.C. § 1319. The Puerto Rico Legislature's tariff on coffee imports was enacted pursuant to this Congressionally-granted authority. See Act No. 77 of May 5, 1931, codified at 13 L.P.R.A. § 2201; see also Miranda v. People of Puerto Rico, 101 F.2d 26, 27 (1st Cir. 1938) (affirming validity of Act. No. 77 of May 5, 1931). Furthermore, in 1935, Congress passed a joint resolution, later enacted into law, that ratified the duties the Puerto Rico Legislature imposed by way of Act No. 77 of May 5, 1931. See 19 U.S.C. § 1319a (stating also that the "collection of all such taxes and duties . . . is legalized, ratified, and confirmed . . . as if the same had, by prior Act of Congress, been specifically authorized and directed"). Therefore, any properly alleged challenge to the coffee tariffs premised on Congress's power to regulate foreign commerce would fail because Congress itself authorized and approved those tariffs.

## V.    CONCLUSION

Based on the foregoing analysis, it is hereby recommended that the third-party complaint against Nelson Colón, and all claims and causes of action therein, be DISMISSED WITH PREJUDICE.

The parties have fourteen (14) days to file objections to this Report and Recommendation. Failure to file the same waives the right to appellate review. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ.

P. 6(c)(1)(B); Local Rule 72(d); see also Henley Drilling v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986).[17]

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico this 9th day of March, 2012.

                s/ Marcos E. López
                U.S. Magistrate Judge

---

[17] In view of the fact that the constitutionality of Section 353 of Title 3 of the Laws of Puerto Rico has been called into question, the Clerk of the Court shall serve notice of this Report and Recommendation to the Honorable Guillermo Somoza Colombani, Secretary of Justice for the Commonwealth of Puerto Rico, and to Wandymar Burgos Pacheco, Esq., Head of the Federal Litigation Division of the Puerto Rico Department of Justice.